# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| YVONNE CRADDOCK, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) No. 2:17-cv-02780-TLP-cgc |
| v. | ) |
| | ) JURY DEMAND |
| FEDEX CORPORATE SERVICES, INC, | ) |
| | ) |
|    Defendant. | ) |

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANT'S PARTIAL MOTION TO DISMISS

Defendant FedEx Corporate Services, Inc. ("Defendant or FedEx") moves to dismiss certain claims in the First Amended Complaint. (ECF No. 16.) The Motion is now ripe for adjudication. For the reasons below, the Defendant's Motion is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

This case arises out of FedEx's allegedly discriminatory employment practices that it imposed on Plaintiff during her employment there. (*See* ECF No. 10.) Plaintiff is an African-American woman who worked for Defendant for thirty-two years in various roles. (*Id*. at PageID 45 & 47.) Her last position was Senior Project/Process Analyst in the company's Supply Chain Department, a subset of the Project Management Department. (*Id*. at PageID 47.)

According to the Amended Complaint, shortly after she started her new position, Plaintiff's mother became terminally ill, and Plaintiff informed her supervisor, LeAnne Scallions, that she needed to leave work early on Tuesdays to tend to her mother. (*Id*. at PageID

48.) Scallions granted her permission. (*Id.*) Even still, Plaintiff alleges that her co-worker Cindy Fisher harassed her repeatedly about her work schedule. (ECF No. 10 at PageID 49–50.) Fisher's harassment eventually turned physical when Fisher positioned herself in front of Plaintiff one day to prevent her from leaving work. (*Id.* at PageID 50.) Plaintiff's reports of harassment went unheeded by her supervisors. (*Id.* at PageID 50–54.)

Not only did the harassment by Fisher continue after Plaintiff reported Fisher's conduct, but it allegedly increased when Defendant assigned Plaintiff additional duties and responsibilities without added compensation. (*Id.* at PageID 52.) Hostilities continued until one day, Fisher became physically aggressive with Plaintiff by "thrust[ing] her torso against [Plaintiff]'s torso in a fighting stance." (*Id.* at PageID 63.) Plaintiff responded in a defensive manner by pushing Fisher away from her. (*Id.*) Fisher contends that it was Plaintiff who made physical contact first. (*Id.*) Defendant then terminated Plaintiff for workplace violence. (*Id.* at PageID 66.)

After her termination, Plaintiff filed a charge of discrimination with the EEOC. (ECF No. 10 at PageID 69.) The case worker assigned to the charge allegedly informed Plaintiff that "she did not have a case." (*Id.*) "Based on that representation, the case was closed." (*Id.*) Plaintiff claims that she then was unable to obtain a right-to-sue letter from the EEOC on this charge. (*Id.*) As a result of this treatment, she filed a second charge under the same EEOC charge number.[1] (*Id.*)

But the EEOC allegedly changed Plaintiff's second charge to a new number[2] without informing her. (ECF No. 10 at PageID 69–70.) When she received the right to sue letter on the second charge, Plaintiff filed her first complaint against Defendant on October 23, 2017. (*See*

---

[1] Charge No. 490-2016-00907.
[2] Charge No. 490-2016-02801.

ECF No. 1.) The Original Complaint alleged seven counts against Defendant related to her treatment and termination. (*Id.*) Defendant was never served the Original Complaint. Instead, Plaintiff filed an Amended Complaint alleging additional counts against Defendant. (ECF No. 10.) The Amended Complaint is the operative complaint and the one that Defendant moves to dismiss partially.

Defendant now moves to dismiss certain claims in Plaintiff's Amended Complaint. (ECF No. 16.) Plaintiff responded (*see* ECF Nos. 21–25) and Defendant has filed its Reply (ECF No. 26). The Motion to Partially Dismiss is now ripe.

## **LEGAL STANDARD**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claims showing that the pleader is entitled to relief." To survive a motion to dismiss under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017).

Though a court will grant a motion to dismiss if a plaintiff has no plausible claim for relief, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirecTV v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "A complaint should only be dismissed if it is clear to the court that 'no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Herhold v. Green Tree Serv., LLC*, 608 F. App'x 328, 331 (6th Cir. 2015) (quoting *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003)). "Dismissal of the action is proper if there is an absence of law to support the type of claim made, if the facts

alleged are insufficient to state a valid claim, or if, on the face of the complaint, there is an insurmountable bar to relief." *Doe v. Ohio*, No. 2:91-CV-464, 2012 WL 12985973, at *5 (S.D. Ohio Feb. 16, 2012) (citations omitted).

## **ANALYSIS**

The Court now addresses Defendant's Motion applying the above standard. Defendant moves to dismiss: (1) the Title VII claims; (2) the libel claim; (3) the Family and Medical Leave Act claim; (4) the Race Discrimination claim under 42 U.S.C. § 1981; and (5) the state law claim for spoliation of evidence. (ECF No. 16.)

### **I.     Plaintiff's Title VII Claims**

Defendant first argues that Plaintiff's Title VII claims should be dismissed as time-barred. (ECF No. 17 at PageID 124–25.) Defendant alleges that Plaintiff did not sue within ninety days of receiving notice of the dismissal of her first EEOC charge as required by 42 U.S.C. § 2000e-5(f)(1) and 29 U.S.C. § 626(e). (*Id.*) Although suit was filed within ninety days of Plaintiff receiving her right-to-sue letter on her second EEOC charge, Defendant contends that "[Plaintiff] is barred from asserting claims based on events which formed the basis of the first EEOC charge that was not timely sued upon." (*Id.* at PageID 127.) In response, Plaintiff alleges that she never received a right-to-sue letter on her first EEOC charge and that her second charge was merely an amendment to the first charge. (ECF No. 25 at PageID 220–21.) Plaintiff, therefore, argues that her Title VII claims are timely.

The Amended Complaint states that Plaintiff filed her first EEOC charge "[s]everal weeks" after she was terminated[3] and that the "case worker assigned to the file represented to the

---

[3] Plaintiff does not state whether she filed her charge after receiving oral notice of termination on January 27, 2016, or written notice on April 27, 2016.

4

plaintiff that she did not have a case. Based upon that representation, the case was closed."
(ECF No. 10 at PageID 69.) EEOC regulations require the Commission to issue written notice after the case is disposed and issue right-to-sue letters when appropriate. *See* 29 C.F.R. § 1601.18(b). The EEOC, therefore, should have issued to Plaintiff her right-to-sue letter by June 18, 2016, at the latest.[4] Yet, Plaintiff states that she never received notice of the dismissal of her first EEOC charge despite many requests. (ECF No. 25 at PageID 224–25.) Because Plaintiff did not hear from the EEOC on her first charge, she filed an "amended" charge under the same charge number. (*Id*. at PageID 221.) The EEOC issued Plaintiff a right-to-sue letter on her second charge, which Plaintiff claims gave her a right to sue on both charges. (*Id*. at PageID 222.)

All that said, there is no record of what claims or allegations Plaintiff included in her first EEOC charge. The Court, therefore, has no way of knowing what claims from her first charge Plaintiff repeated in her second EEOC charge. In drawing all reasonable inferences for Plaintiff, the Court cannot determine, at this stage of the proceedings, that Plaintiff could not obtain relief under Title VII. Discovery will likely reveal the contents of Plaintiff's first EEOC charge giving the Court another chance to revisit the issue. Based on the pleadings alone, the Court denies Defendant's Motion to Dismiss Plaintiff's Title VII claims.

## II. Plaintiff's Libel Claim

Defendant next argues that Plaintiff is not entitled to relief under her libel claim because it is time-barred and based on privileged communications that cannot undergird a libel claim. (ECF No. 17 at PageID 127–31.) Plaintiff bases her libel claim on statements made by

---

[4] The EEOC destroyed all information related to Plaintiff's first EEOC charge on June 18, 2016. (*See* ECF No. 16-1.)

Defendant to the EEOC in its position statement responding to the second EEOC charge. (ECF No. 10 at PageID 90–91.) The complaint contains no other allegations of defamation occurring outside the position statement. Whether a privilege protects these statements would dispose of Plaintiff's claim. The Court, therefore, addresses this argument first.

### A. Which jurisdiction's law governs the claim of privilege?

Federal courts apply the forum state's choice of law rules to claims heard under supplemental jurisdiction. *Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 136 (6th Cir. 1996). Tennessee choice of law rules dictate that "the state with the most significant relationship to the occurrence and the parties" should have its law applied to the claim. *Id*. (citing *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992)). Tennessee has the most significant relationship here because the relationship between the parties is centered in Tennessee, both parties are domiciled in Tennessee, and the conduct leading to the alleged injury occurred in Tennessee. *See* Restatement (Second) of Conflict of Laws § 145 (1971). Tennessee's law on privilege thus applies to this action.

Tennessee recognizes an absolute privilege for statements made during a judicial or quasi-judicial proceeding "that are relevant and pertinent" to the action. *Lambdin Funeral Serv. v. Griffith*, 559 S.W.2d 791, 792 (Tenn. 1978) (citations omitted). Such statements cannot form the basis of defamation claims even when the statements "are made maliciously and corruptly." *Id*. That said, Tennessee courts have not decided whether this privilege applies to communications with the EEOC about pending charges. With no guidance from the Tennessee Supreme Court, the Court must attempt to determine how Tennessee courts would rule on the issue. *See Clutter v. Johns-Manville Sales Corp.*, 646 F.2d 1151, 1153 (6th Cir. 1981).

The Tennessee Supreme Court has ruled that the privilege extends to other judicial and quasi-judicial proceedings. For example, it ruled that the privilege applies in administrative proceedings where commissioners "have powers of discretion in applying the law to the facts which are regarded as judicial, or 'quasi-judicial' in character." *Lambdin*, 559 S.W.2d at 792 (quoting William L. Prosser, *Law of Torts* 799 (3d ed. 1964)). Statements made in these proceedings must be "relevant and pertinent to the issues involved" to be privileged. *Id.* At its heart, the privilege exists because of "the public's interest in and need for a judicial process free from the fear of a suit for damages for defamation . . . based on statements made in the course of judicial or quasi-judicial proceedings." *Id.* (citing *Jones v. Trice*, 360 S.W.2d 48 (Tenn. 1962); *Crockett v. McClanahan*, 72 S.W. 950 (Tenn. 1903)).

In *Lambdin*, the privileged communications related to proceedings before the Tennessee Board of Funeral Directors and Embalmers. 559 S.W.2d at 792. Since then, Tennessee courts have extended this privilege to attorney solicitations published before litigation, *Simpson Strong-Tie Co., Inc. v. Stewart, Estes & Donnell*, 232 S.W.3d 18, 24 (Tenn. 2007), statements made at a hearing conducted by a city zoning board over the matter at issue, *Evans v. Nashville Banner Pub. Co.,* No. 87-164-II, 1988 WL 105718, at *4 (Tenn. Ct. App. Oct. 12, 1988), and an allegedly libelous letter published in anticipation of a proceeding before the Tennessee Board for Licensing Contractors, *Tabor v. Eakin*, No. 03A01-9902-CV-00043, 1999 WL 330318, at *5 (Tenn. Ct. App. May 26, 1999).

**B.     Would Tennessee courts recognize Defendant's claim of privilege?**

Having reviewed the extent of the privilege in Tennessee, the Court must now decide whether Defendant's statements to the EEOC were made during, and are relevant to, a quasi-judicial proceeding. The EEOC enforces various fair-employment statutes, including Title VII

of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*. The EEOC process includes learning about an alleged violation and investigating those allegations. 29 C.F.R. §§ 1601.6 & 1601.15. Furthermore, the EEOC's investigatory power extends to requesting documents and other information from the parties, interviewing witnesses, and issuing subpoena's compelling the attendance of witnesses and production of evidence. 29 C.F.R. § 1601.16. The EEOC's final duty is to determine whether "reasonable cause" exists to believe that an employer has committed a violation of law. 29 C.F.R. § 1601.21. If so, the EEOC may sue on behalf of the charging party or notify the party that they themselves may sue. *Id*.

Plaintiff here filed a charge with the EEOC alleging unlawful employment discrimination by Defendant. The EEOC required Defendant to submit a position statement on the charge, which the Defendant did. It is this position statement that sparks Plaintiff's defamation claim. Based on the EEOC proceedings, including the requirement that an aggrieved party file a charge with the commission before suing and the Commission's investigatory and subpoena power, the Court finds that the Tennessee Supreme Court would find that EEOC actions constitute quasi-judicial proceedings. As a result, any statements made in an EEOC action that are relevant to the charge are privileged and cannot justify a defamation claim. *See Lambdin*, 559 S.W.2d at 792.

Plaintiff's libel claim must fail because Defendant's statements fall within the category of privileged communications. The Court, therefore, dismisses Plaintiff's defamation claim. Because the Court dismisses Plaintiff's libel claim on this basis, the Court does not address the timeliness of Plaintiff's claim.

## III. Plaintiff's Family and Medical Leave Act Claim

### A. Which limitations period applies to Plaintiff's FMLA claim?

Defendant next attacks Plaintiff's Family and Medical Leave Act ("FMLA") claim as time-barred. (ECF No. 17 at PageID 131.) Under the FMLA, a Plaintiff typically has two years to sue, but the limitations period is extended to three years if the employer's violation was willful. 28 U.S.C. § 2617(c)(1)–(2). A plaintiff must allege facts plausibly showing that the defendant "intentionally or recklessly violated the FMLA" to plead a willful violation. *Crugher v. Prelesnik*, 761 F.3d 610, 617 (6th Cir. 2014) (quoting *Hoffman v. Prof'l Med Team*, 394 F.3d 414, 417 (6th Cir. 2005)); *see also Williams v. Nw. Airlines, Inc.*, 53 F. App'x 350, 352 (6th Cir. 2002) ("A willful violation is shown when an employer knew or showed reckless disregard regarding whether its conduct was prohibited.").

While Plaintiff makes a conclusory allegation that Defendant's actions were willful, her complaint is otherwise devoid of any factual allegation that Defendant intentionally or recklessly violated Plaintiff's rights under the FMLA. In fact, the Amended Complaint alleges that Plaintiff's immediate supervisor allowed her to leave work early on Tuesdays to care for her mother. (*See* ECF No. 10 at PageID 85.) Plaintiff's complaint at most alleges that Defendant was negligent in not informing Fisher that it authorized Plaintiff to leave work early on certain days. As a result, the two-year limitations period under 28 U.S.C. § 2617(c)(1) applies to this case.

### B. Does Plaintiff's FMLA claim relate back to her Original Complaint?

Now the Court must determine whether Plaintiff brought her claim within the correct time frame. The Plaintiff first alleged Defendant violated the FMLA in her Amended Complaint, filed on March 20, 2018, more than two years after Plaintiff's employment was terminated,

January 27, 2016.  (*See* ECF No. 10 at PageID 87.)  That said, Plaintiff alleges that her claim relates back to the Original Complaint.  (ECF No. 25 at PageID 232.)  Her claim would be timely if this is true.

An amended pleading relates back to the original pleading when the "amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading . . . ."  Fed. R. Civ. P. 15(c)(1)(B).  Courts determine the applicability of this rule "by asking whether the party asserting the statute of limitations defense had been placed on notice that he could be called to answer for the allegations in the amended pleading."  *Hall v. Spencer, Cty., Ky.*, 583 F.3d 930, 934 (6th Cir. 2009) (quoting *Bledsoe v. Community Health Sys., Inc.*, 501 F.3d 493, 516 (6th Cir. 2007)).

Plaintiff's Original Complaint only references her mother's illness twice.  (*See* ECF No. 1 at PageID 18–19.)  Absent from the Original Complaint is any assertion that Defendant denied her leave to provide care for her mother.  And the Original Complaint makes no allegation that Plaintiff informed Defendant of her mother's illness.  The allegations in the Original Complaint, therefore, did not put Defendant on notice that it could be liable for the FMLA claim.  Because Plaintiff did not assert the FMLA claim until over two years after her termination,[5] the claim is time-barred.  The Court, therefore, dismisses this claim.

## IV. Plaintiff's 42 U.S.C. § 1981 Claim

Like Plaintiff's libel claim, her 42 U.S.C. § 1981 is based on Defendant's assertions in the position statement submitted to the EEOC.  (*See* ECF No. 10 at PageID 81–84; ECF No. 25 at PageID 237.)  "Section 1981 prohibits racial discrimination in the making and enforcement of

---

[5] Plaintiff was terminated on January 27, 2016.  (ECF No. 10 at PageID 87.)  Plaintiff's termination is the last event that could have constituted an alleged violation of the FMLA.

contracts." *McCormick v. Miami Univ.*, 693 F.3d 654, 659 (6th Cir. 2012) (citing *Runyon v. McCrary*, 427 U.S. 160 (1976)).  A plaintiff must establish that "(1) he [or she] belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) Defendants intended to discriminate against him [or her] on the basis of race; and (3) Defendants' discriminatory conduct abridged a right enumerated in section 1981(a)" to state a claim under § 1981.  *Carmichael v. City of Cleveland*, 571 F. App'x 426, 432 (6th Cir. 2014) (quoting *Amini v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006)) (alterations in original).  It is required that the plaintiff plead "racial animus" to prevail on this claim.  *Moniz v. Cox*, 512 F. App'x 495, 501 (6th Cir. 2013) (citation omitted).

Here Plaintiff alleges that Defendant made "false and libelous racially (sic) based statement[s]" in its position statement.  (ECF No. 10 at PageID 82.)  The statements Plaintiff refers to include, among other things, that Plaintiff exhibited a "lack of engagement and [had] attendance issues" and that Plaintiff would take personal calls on her cell phone while she was supposed to be participating in meetings.  (*Id*. at PageID 83.)  Plaintiff argues that "Defendants used their mammoth corporate presence to legitimize both implicit and outright historically racially motivated stereotypical characterizations of Plaintiff as an African American." (ECF No. 25 at PageID 237.)

The Court would have to find that these statements exhibit intentional discrimination on the basis of race to allow Plaintiff to proceed with her § 1981 claim.  Plaintiff's claim lacks any factual allegations showing that Defendant's actions stemmed from racial animus.  Some of the Defendant's cited statements are mere denials of Plaintiff's claims, while others allege workplace conduct that would justify termination of any employee if true.  Plaintiff relies exclusively on her conclusory statements that Defendant's actions were based on a racially

11

biased policy.  As such, these allegations do not support a claim under 42 U.S.C. § 1981.  The Court, therefore, dismisses the § 1981 claim.

**V.      Spoliation of Evidence Under Tennessee Law**

Finally, Defendant moves to dismiss Plaintiff's independent "spoliation" claim arguing that Tennessee law does not provide for such a claim.  (ECF No. 17 at PageID 134.)  Plaintiff does not contest Defendant's position here.  (ECF No. 24 at PageID 210.)  As a result, the Court dismisses Plaintiff's spoliation claim.

## **CONCLUSION**

For these reasons, the Court GRANTS IN PART AND DENIES IN PART Defendant's Partial Motion to Dismiss.  Defendant's Motion is GRANTED as to the following claims:

(1) Libel Claim;

(2) Family and Medical Leave Act Claim;

(3) 42 U.S.C. § 1981 Claim; and

(4) Spoliation Claim.

These claims are dismissed without prejudice.  Defendant's Motion is DENIED WITHOUT PREJUDICE as to Plaintiff's Title VII claims.

**SO ORDERED**, this 4th day of March, 2019.

                                               s/Thomas L. Parker
                                              THOMAS L. PARKER
                                              UNITED STATES DISTRICT JUDGE