**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| YVONNE CRADDOCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:17-cv-02780-TLP-cgc |
| v. | ) | |
| | ) | JURY DEMAND |
| FEDEX CORPORATE SERVICES, INC. | ) | |
| and LEE ANN SCALLION, in her official | ) | |
| position as supervisor, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants, FedEx Corporate Services ("Defendant FedEx") and LeeAnne Scallions ("Defendant Scallions"), move for summary judgment as to Plaintiff's Title VII claims of discrimination.  (ECF No. 54.)  Plaintiff Yvonne Craddock responded in opposition (ECF No. 72), and Defendants replied (ECF No. 73).  For the reasons below, the Court **GRANTS** Defendants' motion for summary judgment.

**BACKGROUND**

The Court takes these facts from Defendants' Statement of Undisputed Material Facts, (ECF No. 54-1), and Plaintiff's Response to Defendants' Material Facts with Genuine Material Facts Supporting Plaintiff's Claims, (ECF No. 72-1).[1]

---

[1] At the outset, the Court notes that Plaintiff attempts to use her own affidavit to dispute many of Defendant's facts.  (*See* ECF No. 72-3.)  But self-serving affidavits, standing alone and without support in the record, will not defeat a motion for summary judgment.  *See Freeman v. Trombley*, 483 F. App'x 51, 58 (6th Cir. 2012) ("[A] self-serving affidavit must be reviewed with great skepticism."); *Capital Telecom Holdings II, LLC v. Grove City, Ohio*, 403 F. Supp. 3d 643, 649 (S.D. Ohio 2019) ("[S]elf-serving affidavits alone are not enough to create an issue of

## I.        Working at FedEx

Plaintiff is an African American female, born in the early 1960s.  (ECF Nos. 54-1 at PageID 338; 72-1 at PageID 645.)  In 1983, Plaintiff began her employment with Federal Express Corporation ("FedEx Express"), a sister company of Defendant FedEx Services.  (ECF Nos. 54-1 at PageID 338; 72-1 at PageID 645.)  Over the years, Plaintiff held many positions at FedEx Express—Handler/Sorter, Operations Support Coordinator, Programmer, Programmer/Programmer Analyst, Senior Business Application Analyst, and Senior Auditor.  (ECF Nos. 54-1 at PageID 338; 72-1 at PageID 646.)  A few years ago, she moved to FedEx Services.

In April 2015, Defendant Scallions hired Plaintiff as a Senior Project Process Analyst at FedEx Services.  (ECF Nos. 54-1 at PageID 339; 72-1 at PageID 646.)  Scallions was Plaintiff's manager and direct supervisor.  (ECF Nos. 54-1 at PageID 339; 72-1 at PageID 646.)  Scallions is an IT Manager, with a team of employees in Ohio and in Memphis, Tennessee.  (ECF Nos. 54-1 at PageID 339; 72-1 at PageID 646.)  Scallions (white female), Cindy Fischer (white female), and Plaintiff (black female) were the only team members in Memphis.  (ECF Nos. 54-1 at PageID 339; 72-1 at PageID 646.)  Fischer was a Project Process Advisor.  (ECF Nos. 54-1 at PageID 339; 72-1 at PageID 647.)  Plaintiff claims also that the entire Supply Chain Service Division had only white males and females, and that Scallions' Ohio team had only white or Hispanic males.  (ECF No. 72-1 at PageID 647.)

When Plaintiff first joined FedEx Services, Scallions provided her with introductory training materials and asked Fischer to be Plaintiff's "training buddy"—a coworker assigned to

---

fact sufficient to survive summary judgment.").  Because the facts Plaintiff alleges in her affidavit are unsupported anywhere else in the record, the Court will consider them with "great skepticism."  Without more from the record, her affidavit cannot create an issue of fact.

assist new hires with on-the-job training.  (ECF Nos. 54-1 at PageID 339–40; 72-1 at PageID 648–49.)  That training buddy, however, has no supervisory authority over the new employee.  (ECF No. 72-1 at PageID 649.)  And Scallions provided many training opportunities and classes to Plaintiff during her first few months.  (ECF Nos. 54-1 at PageID 340; 72-1 at PageID 649.)  This treatment matched training for all new Senior Project Process Analysts.  (*Id.*)

In that regard, Scallions offered off-site training at the FedEx Services warehouse on Tuggle Road in September 2015.  (ECF No. 54-1 at PageID 340.)  Defendants contend that Scallions viewed that training as a great opportunity for hands-on experience working with various business teams and warehouse functions.  (ECF No. 54-1 at PageID 340.)  But Plaintiff asserts that Scallions did not offer her this opportunity for training.  Instead, she claims that Scallions reassigned her to the Tuggle Road warehouse (1) to reduce interaction between Plaintiff and Fischer, and (2) to have Plaintiff streamline existing processes in the supply chain.  (ECF No. 72-1 at PageID 651.)  So Plaintiff began spending somewhere between 10 and 20 hours a week at the Tuggle Road warehouse.  (ECF Nos. 54-1 at PageID 341; 72-1 at PageID 652–53.)

At any rate, Plaintiff had a strained working relationship with Fischer.  (ECF Nos. 54-1 at PageID 341; 72-1 at PageID 653.)  Fischer was frustrated with the work hours Plaintiff kept— saying that she arrived at 8:00 a.m., left at 4:00 p.m., and routinely took two-hour lunches.  (ECF No. 54-1 at PageID 341.)

So Fischer began documenting Plaintiff's comings and goings by periodically emailing herself and others.  (ECF Nos. 54-1 at PageID 341; 72-1 at PageID 656–57.)  And Fischer periodically reported about Plaintiff's attendance to Scallions in response to questions about Plaintiff's progress and performance.  (ECF Nos. 54-1 at PageID 341; 72-1 at PageID 657.)  As

an example, Scallions learned about attendance issues when she asked Fischer in August 2015 about ongoing issues impacting her ability to train Plaintiff.  (ECF No. 54-1 at PageID 341.)

Plaintiff grew frustrated and thought it unfair that Fischer was "keeping tabs on her" and reported that to Scallions.  (ECF Nos. 54-1 at PageID 341; 72-1 at PageID 659–60.)  Defendant alleges that, in response to those complaints, Scallions counseled Fischer and reminded her "where [Plaintiff] was or was not was none of [Fischer's] business."  (ECF No. 54-1 at PageID 341.)  Plaintiff contends, however, that after her first report about Fischer, Scallions reassigned Plaintiff to the Tuggle Road warehouse to limit their interactions.  (ECF No. 72-1 at PageID 660.)

According to Scallions, Plaintiff never classified Fischer's comments as threatening or hostile.  (ECF No. 54-1 at PageID 342.)  Plaintiff says that she reported many instances of what she considers "verbal, emotional, and physical assault."  (ECF No. 72-1 at PageID 660–61.)  But Plaintiff never alleged racial discrimination until this suit.  (ECF Nos. 54-1 at PageID 342; 72-1 at PageID 661.)

## II.     The Altercation

The relationship between Plaintiff and Fischer was not all bad, however.  For example, in October 2015, Fischer emailed Scallions praising Plaintiff's progress.  (ECF Nos. 54-1 at PageID 342; 72-1 at PageID 662–63.)  But Plaintiff alleges also that Fischer followed the email of praise with other emails disparaging Plaintiff's performance.  (ECF No. 72-1 at PageID 663.)

With this in mind, in December 2015, Plaintiff took over an IT conference call for Fischer.  (ECF No. 54-1 at PageID 342; 72-1 at PageID 664.)  Plaintiff expected ten to twelve participants, but only three or four of the invitees joined.  (ECF No. 54-1 at PageID 342; 72-1 at PageID 665.)  Typically, conference hosts are expected to send minutes of the call to all invitees.

4

(ECF No. 54-1 at PageID 342; 72-1 at PageID 665.)  But Plaintiff did not do so.  (ECF No. 54-1 at PageID 342; 72-1 at PageID 665.)  Plaintiff told Fischer that she did not complete the report because most invitees did not participate.  (ECF No. 54-1 at PageID 342; 72-1 at PageID 666.)  Fischer asked why Plaintiff did not call missing participants into the meeting, to which Craddock responded that she would not do that because "[t]hey all received the same invitation [she] received" and "[w]e're all adults."  (ECF No. 54-1 at PageID 342; 72-1 at PageID 666.)

Later that day, Fischer emailed Plaintiff requesting that she send minutes of the call to all invitees.  (ECF No. 54-1 at PageID 343; 72-1 at PageID 666.)  Plaintiff responded by email—"[n]ot doing it!"  Not satisfied with an email exchange, Plaintiff then entered Fischer's cubicle.  (ECF No. 54-1 at PageID 343; 72-1 at PageID 666.)

Entering the cubicle, Plaintiff confronted Fischer.  She asked Fischer to stop emailing her about the minutes of the call "because you're trying to make me look bad in front of my manager, and I need you to stop."  (ECF No. 54-1 at PageID 343; 72-1 at PageID 666–67.)  They argued back and forth briefly before Fischer asked Plaintiff to leave her cubicle.  (ECF No. 54-1 at PageID 343; 72-1 at PageID 667.)  Plaintiff refused to leave, however, "because [she] wanted . . . answers" as to "why [Fischer] was still doing this . . . ."  (ECF No. 54-1 at PageID 343; 72-1 at PageID 667.)  So Fischer asked Plaintiff again to leave her cubicle, and Plaintiff again refused.  (ECF No. 54-1 at PageID 343; 72-1 at PageID 667.)

The two continued to argue back and forth.  Then Plaintiff pushed Fischer.  (ECF No. 54-1 at PageID 343; 72-1 at PageID 667.)  Plaintiff now contends that she did not push Fischer.  (ECF No. 72-1 at PageID 668.)  But she admits that, shortly after the encounter with Fischer, Scallions asked her directly about her actions.  And she told Scallions that she pushed Fischer.  (*Id.* at PageID 669.)  Plaintiff now adds that she tried to explain to Scallions that Fischer had

5

been acting "aggressively" toward her and that, at one point, she "had to put [her] arm in front of [herself] to protect [hers] from [Fischer]" because Fischer was standing "toe to toe and torso to torso" with Plaintiff.  (ECF No. 72-1 at PageID 669–70.)

And Plaintiff now alleges that she never pushed Fischer.  Rather, she claims that, as she turned to leave Fischer's cubicle, Plaintiff's raised hand and arm—used to create space between them—physically touched Fischer.  And so Fischer's characterization that Plaintiff "pushed" her is inaccurate.  (*Id.*)  Fischer admitted in her deposition that she occupied Plaintiff's personal space when Plaintiff entered Fischer's cubicle.  (*Id.* at PageID 670.)  On the one hand, Plaintiff contends Fischer was the aggressor.  But yet she never alleges that Fischer physically touched her.  (*Id.*)

All agree that Plaintiff finally left Fischer's cubicle after receiving a phone call from her mother's caregivers.  (ECF Nos. 54-1 at PageID 343; 72-1 at PageID 670–71.)

Next Fischer returned to her computer to locate the contact number for FedEx Security to report the incident.  (ECF Nos. 54-1 at PageID 343; 72-1 at PageID 671.)  Unable to find the right number, Fischer reported it to Scallions.  (ECF Nos. 54-1 at PageID 344; 72-1 at PageID 671.)  Scallions testified that Fischer appeared visibly upset when reporting that Plaintiff assaulted her—even saying that she wanted to press charges.  (ECF Nos. 54-1 at PageID 344; 72-1 at 671–72.)  Scallions tried to calm Fischer and took a report of the incident.  (ECF Nos. 54-1 at PageID 344; 72-1 at PageID 671–72.)

Scallions then approached Plaintiff to ask her about Fischer's allegations.  (ECF Nos. 54-1 at PageID 344; 72-1 at PageID 672.)  Plaintiff now claims that she tried to explain Fischer's aggressive actions to Scallions.  (ECF No. 72-1 at PageID 672.)  But according to Plaintiff,

Scallions refused to consider Plaintiff's explanations.  (*Id.*)  What is more, Plaintiff now claims that she never admitted to Scallions that she ever pushed Fischer.  (*Id.* at PageID 672.)[2]

After talking to Plaintiff and Fischer, Scallions asked Plaintiff to leave and to work from home.  (ECF Nos. 54-1 at PageID 344; 72-1 at PageID 673.)  She later suspended Plaintiff with pay pending the outcome of an investigation into the incident.  (ECF Nos. 54-1 at PageID 344; 72-1 at PageID 673.)

## III.  Investigation and Termination

Scallions then turned the matter over to the FedEx Security Team.  John Overall, a Senior Security Specialist for FedEx Express, conducted the investigation.  (ECF Nos. 54-1 at PageID 344; 72-1 at PageID 673.)  As part of the investigation, Plaintiff gave a handwritten statement about the incident with Fischer.  (ECF Nos. 54-1 at PageID 344; 72-1 at PageID 673.)  In her written statement, Plaintiff admitted telling Scallions that she pushed Fischer, but tried to recharacterize that contact, stating she did not push Fischer "with an open hand."  (ECF Nos. 54-1 at PageID 344–45; 72-1 at PageID 673–74.)  Perhaps, suggested Plaintiff, Fischer may have

---

[2] Plaintiff now attempts to create a disputed material fact using her own contradicting deposition testimony.  At one point, Plaintiff states that she admitted to pushing Fischer but tried to clarify that Fischer was the aggressor and Plaintiff was merely protecting herself.  (ECF No. 54-2 at PageID 443–44.)  At another, Plaintiff claims she never admitted to pushing Fischer and always maintained that story.  (ECF No. 72-1 at PageID 672–73.)

Plaintiff provides a purported quote from deposition testimony where she claims she never told Scallions that she pushed Fischer.  But Plaintiff does not provide a citation to the record where that testimony is located.  And the Court will not dig through the extensive records to find such support.  *Emerson v. Novartis Pharm. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) ("'[J]udges are not like pigs, hunting for truffles' that might be buried in the record.").  On the other hand, there are numerous citations to the record where Plaintiff admitted—both orally to Scallions and in a written letter to security personnel—that she pushed Fischer.  (*See* ECF Nos. 54-2 at PageID 441–44, 447, 518.)  The Court will not take Plaintiff's bald assertions of a dispute at face value.  The Court therefore finds that there is no *genuine* dispute of material fact that Plaintiff *admitted* that she pushed Fischer.

stumbled when Plaintiff "put [her] arm up to protect [herself]" from Fischer's aggressive actions. (*Id.*)

Based on Mr. Overall's investigation, Scallions terminated Plaintiff for violating FedEx's Acceptable Conduct Policy.  (ECF Nos. 54-1 at PageID 345; 72-1 at PageID 674–75.)  FedEx's termination process requires the firing manager to submit a request for termination to the human resources department.  (ECF Nos. 54-1 at PageID 345; 72-1 at PageID 675.)  In the request for termination of Plaintiff, Scallions listed Plaintiff's performance as "outstanding" over the last several years.  (ECF Nos. 54-1 at PageID 345; 72-1 at PageID 675.)  In fact, Scallions rated Plaintiff a wonderful employee and said she was satisfied with her performance.  (ECF Nos. 54-1 at PageID 345; 72-1 at PageID 675–76.)  Plaintiff's termination, therefore, was unrelated to performance of her job duties.  (ECF Nos. 54-1 at PageID 345; 72-1 at PageID 676.)

Instead, Plaintiff's termination appears to be based only on the incident with Fischer. According to Defendants, when a security investigation confirms that an employee physically touched another in an aggressive or violent manner—a punch, shove, hit, or push—that employee will be terminated.  (ECF No. 54-1 at PageID 346.)  Plaintiff disputes that policy, however, again alleging that Fischer "was the aggressor and yet she was not required to leave the premises pending an investigation and [she was not] suspended or terminated."  (ECF No. 72-1 at PageID 680.)  But again, Plaintiff does not allege that Fischer physically touched her.  At most, Plaintiff alleges that, even though Plaintiff entered Fischer's cubicle and would not leave, Fischer (somehow) invaded her personal space and yelled at her.  (*See* ECF No. 72-1 at PageID 670.)

Because this is a case alleging racial discrimination, the Court has to consider testimony about racial attitudes.  Plaintiff testified in her deposition that neither Scallions nor Fischer ever

did or said anything that showed bias or prejudice against black people generally.  (ECF Nos. 54-1 at PageID 345; 72-1 at PageID 676–78.)  But Plaintiff contends that Scallions was biased against her because of her race.  (ECF No. 72-1 at PageID 676–77.)   Plaintiff stated that Fischer was equally negative and critical of white employees as she was of Plaintiff (ECF No. 54-2 at PageID 411–13).  So Plaintiff never reported to anyone at FedEx that Fischer discriminated against her because of her race.  (ECF Nos. 54-1 at PageID 345; 72-1 at PageID 678.)

## LEGAL STANDARD

The Court begins its analysis here by consulting Federal Rule of Civil Procedure 56. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is material for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir. 2012) (internal quotation marks omitted).  "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." *Mosholder v. Barnhardt*, 679 F.3d 443, 448 (6th Cir. 2012) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986)).  "Mere conclusory and unsupported allegations, rooted in speculation, do not meet [the] burden." *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003).  "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." *Mosholder*, 679 F.3d at 448–49 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

In response, the non-moving party "may not rest upon its mere allegations." *Great West Cas. Co. v. Flandrich*, 605 F. Supp. 2d 955, 960 (S.D. Ohio 2009).  The non-moving party "must produce evidence that results in a conflict of material fact to be resolved by a jury[,]" and the

Court "must afford all reasonable inferences, and construe the evidence, in the light most favorable to the non-moving party." *Cox v. Ky. Dept of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). "The non-moving party must present 'significant probative evidence' to show that there is more than 'some metaphysical doubt as to the material facts.'" *Id.* (quoting *Moore v. Philip Morris Co.*, 8 F.3d 335, 339–40 (6th Cir. 1993)). "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." *Chapman v. UAW Local 1005*, 670 F.3d 677, 680 (6th Cir. 2012) (citing *Celotex Corp.*, 477 U.S. at 323).

Now the Court will apply the law to the undisputed facts.

## ANALYSIS

I.   **Plaintiff's Has Abandoned Her Claims Against Defendant Scallions, Individually, and Her Equal Pay Act Claim Against Defendant FedEx Services**

Defendants argue that Plaintiff has abandoned her Title VII claims against Defendant Scallions, individually, and her Equal Pay Act claims against Defendant FedEx Services because she failed to respond to Defendants' motion for summary judgment on those claims. (ECF No. 73 at PageID 716–17.) The Sixth Circuit makes clear that "a plaintiff is deemed to have abandoned a claim when she fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (citing *Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment)); *see also Clark v. City of Dublin*, 178 F. App'x 522, 524–25 (6th Cir. 2006) (recognizing that the failure to respond properly to a motion for summary judgment constitutes abandonment of the claim); *Connor v. Hardee's Food Sys.*, 65 F. App'x 19,

24–25 (6th Cir. 2003) ("Because Plaintiffs failed to brief the issue before the district court . . . we find that Plaintiff's abandoned their . . . claim.").

Plaintiff has abandoned her claims against Defendant Scallions, individually, as well as her Equal Pay Act claim against Defendant FedEx Services.  The Court therefore declines to consider the merits of those claims and **GRANTS** summary judgment in Defendants' favor on: (1) all of Plaintiff's claims against Defendant Scallions individually, and (2) Plaintiff's Equal Pay Act claim against Defendant FedEx.

## II.   Plaintiff's Race Discrimination Claims Against Defendant FedEx

Title VII prohibits employment discrimination "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race[.]"  42 U.S.C. § 2000e-2(a)(1).  To establish a claim under Title VII, a plaintiff must present either direct or circumstantial evidence of discrimination on part of the employer.  *Johnson v. Kroger Co.*, 319 F.3d 858, 864–65 (6th Cir. 2003) (citation omitted).  Because Plaintiff offers no direct evidence of racial discrimination by Defendant FedEx here, she must rely on the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973), and refined in *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981).

Under the *McDonnell-Douglas* burden-shifting framework, Plaintiff must first establish a prima facie case of discrimination.  *Burdine*, 450 U.S. at 252–53 (citing *McDonnell Douglas*, 411 U.S. at 802).  If Plaintiff can make a prima facie showing, the burden of production then shifts to FedEx to "articulate some legitimate, nondiscriminatory reason for the [adverse action.]"  *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802).  Plaintiff has to prove that the reasons FedEx proffers were not the true reasons but were mere pretexts for prohibited discrimination.  *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804).

11

### A.      Plaintiff States a Prima Facie Case of Race Discrimination

To make a prima facie showing of race discrimination, Plaintiff must prove "(1) that [she] is a member of a protected group; (2) that [s]he was subjected to an adverse employment action; (3) that [s]he was qualified for the position; and (4) that either similarly situated, non-protected employees were treated more favorably or [s]he was replaced by someone outside [her] protected class." *Hood v. City of Memphis Pub. Works Div.*, No. 17-cv-02869-SHM-dkv, 2018 WL 2387103, at *3 (W.D. Tenn. Jan. 8, 2018) (citing *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010)).  The Sixth Circuit has made clear that a plaintiff's burden of establishing a prima facie case is not onerous and is "a burden easily met." *See, e.g.*, *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651 (6th Cir. 2000) (citing *Burdine*, 450 U.S. at 253); *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987)).  Because she does not allege that Defendant replaced her with someone outside her protected class, Plaintiff's claim rests on allegations that she was treated less favorably than similarly situated, non-protected employees. *Younis*, 610 F.3d at 363.

Plaintiff's race discrimination claim arises from her fight with Fischer, which led to Plaintiff's termination.  Defendant FedEx does not contest that Plaintiff, an African-American, was a member of a protected class, that she was qualified to serve as a Senior Project Process Analyst, and that her termination constituted an adverse employment action.  (*See* ECF No. 54-3 at PageID 603.)

But FedEx argues that Plaintiff cannot prove the fourth element of her race discrimination claim.  In short, Plaintiff was not treated differently than similarly situated non-minority employees.  (ECF No. 54-3 at PageID 603.)  Plaintiff counters that Fischer committed "numerous acts of violence" and Defendant never disciplined her, although Defendant suspended

and then terminated Plaintiff for "alleged acts of violence." (ECF No. 72-4 at PageID 707.) So according to Plaintiff, one can reasonably infer that the only reason for the difference in treatment between Fischer and her is race discrimination in violation of Title VII. (*Id.*)

To support an inference of unlawful discrimination, Plaintiff must show that comparable non-minority employees similarly situated in all relevant respects receive more favorable treatment than Plaintiff. *Ayers-Jennings v. Fred's Inc.*, 461 F. App'x 472, 476 (6th Cir. 2012) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352–55 (6th Cir. 1988)). In the disciplinary context, the Sixth Circuit has held that the plaintiff and proposed person for comparison must have engaged in acts of "comparable seriousness." *Dickens v. Interstate Brands Corp.*, 384 F. App'x 465, 468 (6th Cir. 2010) (quoting *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002)). And in making that determination, courts consider "certain factors, such as whether the individuals 'have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Id.* (quoting *Ercegovich*, 154 F.3d at 352.)

Because the physical altercation with Fischer spurred Plaintiff's termination, the relevant comparison between Plaintiff and Fischer should involve only their roles and actions in the altercation. Plaintiff alleges Fischer committed an act of workplace violence by standing in her cubicle, stomping her feet, and yelling at Plaintiff to leave her cubicle following their initial confrontation. (ECF No. 72-1 at PageID 667.) Plaintiff therefore contends that even though Fischer never touched her, Fischer was the aggressor and Defendant should have punished her appropriately. (*Id.*)

FedEx claims that it terminated Plaintiff's employment for violating its Acceptable Conduct Policy by physically touching Fischer in a violent or aggressive manner.  (ECF No. 54-3 at PageID 604–05.)  Defendant FedEx argues that Plaintiff's allegations of Fischer's stomping and yelling—as inappropriate as it may be—cannot be properly compared to Plaintiff's physical violence against Fischer.  (*Id.*)  For that reason, according to Defendant, Plaintiff has failed to meet the fourth element of her prima facie case because she has not identified a non-protected employee engaged in the same conduct who received more favorable treatment.  (*Id.*)

But the Court cannot say that there is no dispute of material fact about whether Plaintiff violated the Acceptable Conduct Policy and Fischer did not.  And that question leaves open whether Plaintiff has met her prima facie burden.  The parties do not dispute that physical touching is grounds for termination under FedEx's policy.  (ECF No. 54-1 at PageID 346.)  And the parties do not dispute that Fischer never *physically touched* Plaintiff, although Plaintiff contends that Fischer's acted in an aggressive manner without physically touching.  (*See* ECF No. 72-1 at PageID 670, 680.)

But neither party included the text of FedEx's Acceptable Conduct Policy as an exhibit to this motion, and the Court is left with questions about whether non-physical threatening or aggressive behavior could lead to termination as well.  (*See* ECF Nos. 54-3 & 72.)  Without the text of the Acceptable Conduct Policy, the Court cannot properly weigh whether Fischer engaged in an act of comparable seriousness and whether she is therefore similarly situated with Plaintiff as to the violation of the Policy.

And taking the evidence in a light most favorable to Plaintiff as the non-moving party, the Court finds that there is a dispute in material fact sufficient to move to the next phase of analysis.  The Court therefore finds that Plaintiff has met her easy burden of establishing a prima

facie case of race discrimination.  *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651 (6th Cir.

2000) (citing *Burdine*, 450 U.S. at 253).  But that does not mean that Plaintiff's claim will

survive to trial.  The Court will still evaluate FedEx's stated legitimate nondiscriminatory reason

for terminating Plaintiff and whether Plaintiff can establish that proposed reason was a mere

pretext for discrimination.  *Burdine*, 450 U.S. at 252–53 (citing *McDonnell Douglas*, 411 U.S. at

802).

### B.  Defendant Offered a Legitimate Nondiscriminatory Reason for Terminating Plaintiff

Because Plaintiff has shown a prima facie case of race discrimination, the burden shifts to

Defendant FedEx to offer a legitimate nondiscriminatory explanation for its actions.  FedEx

contends that it terminated Plaintiff's employment for violating its workplace violence policy.

*Burdine*, 450 U.S. at 252–53 (citing *McDonnell Douglas*, 411 U.S. at 802).  Likewise, Rich

Pyszniak, the Human Resources advisor testified in his deposition that any employee who

*physically* touches another in an aggressive or violent manner will be terminated.  (ECF No. 54-1

at PageID 346.)  That reason is a legitimate, nondiscriminatory explanation for terminating

Plaintiff's employment.  *See, e.g.*, *Evans v. Walgreen Co.*, 813 F. Supp. 2d 897 (W.D. Tenn.

2011) (citing to *Jones v. Potter*, 488 F.3d 397, 401 (6th Cir. 2007)).  So the burden shifts back to

Plaintiff to show pretext.  *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804).

### C.  Plaintiff Cannot Prove That Her Termination Was Pretext

Pretext comes in many forms.  "Pretext may be established 'either directly by persuading

the [trier of fact] that a discriminatory reason more likely motivated the employer directly or

indirectly by showing that the employer's proffered explanation is unworthy of credence.'"

*White v. Baxter Healthcare Corp.*, 533 F.3d 381 (6th Cir. 2008) (quoting *Burdine*, 450 U.S. at

256).  "A plaintiff will usually demonstrate pretext by showing that the employer's stated reason

for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *Id.* at 393 (citation omitted). Plaintiff may also show pretext by offering evidence which challenges the reasonableness of the employer's decision 'to the extent that the inquiry sheds light on whether the employer's proffered reason for the employment was its actual motivation.'" *Id.* (citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003)). That said, "[s]ummary judgment is proper if, based on the evidence presented, a jury could not reasonably doubt the employer's explanation." *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009) (citation omitted).

Defendant argues that Craddock's termination for workplace violence was not a pretext to hide an intent to discriminate against her based on her race and that Plaintiff cannot prove otherwise. (ECF No. 54-3 at PageID 606.) According to Defendant, Plaintiff has no specific evidence to back her speculation that Defendant discriminated against her. (*Id.* at 605–06.) That speculation of course, cannot carry her heavy burden to prove pretext. (*Id.*) On the other hand, even though the parties agree that Plaintiff and Fischer had an argument in which Fischer did not touch Plaintiff and in which Plaintiff did touch Fischer, (ECF No. 72-1 at PageID 670), Plaintiff alleges that her opinion is that the Defendant's termination for workplace violence was not grounded in fact and was, therefore, a pretext for discrimination (ECF No. 72-4 at PageID 712).

But Plaintiff cannot just speculate and opine that her termination was improper discrimination. Plaintiff must bring some proof that Defendant's stated reason for her termination was pretext for discrimination. "Mere personal beliefs, conjecture, and speculation are insufficient to support an inference of . . . discrimination." *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 724 (6th Cir. 2006) (citing *Woythal v. Tex-Tenn Corp.*, 112 F.2d 261, 268 (6th Cir. 1986)).

Plaintiff has not established that FedEx's reason for terminating her is baseless.  When a plaintiff attempts to show that the employer's proffered reasons was baseless, the Court examines whether the employer had an honest belief in the proffered reasons.  *Blackshear v. Interstate Brands Corp.*, 495 F. App'x 613, 618 (6th Cir. 2012).  "If the employer had an honest belief in the proffered basis for the adverse employment action, and that belief arose from reasonable reliance on the particularized facts before the employer before it made the decision, the asserted reason will not be deemed pretextual even if it was erroneous."  *Upshaw*, 576 F.3d at 586.

For issues related to the employer's claim of honest belief, to raise a material fact dispute to overcome summary judgment, Plaintiff has to show "'more than a dispute over the facts upon which the discharge was based.'"  *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012) (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493–94 (6th Cir. 2001).  What is more, the employer can be mistaken about the underlying facts.  So it is not enough to present evidence showing that the employer was wrong about the truth of the facts upon which it based its decision.  *Id.* at 285–86 ("As long as the employer held an honest belief in its proffered reason, 'the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless.'") (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998).

The bottom line is that, Plaintiff must come forward with evidence showing that such an error is "'too obvious to be unintentional.'"  *Id.* (quoting *Smith*, 155 F.3d at 807).

FedEx's reason for the discharge here was based on a confrontation where Plaintiff admittedly physically touched Fischer.  (ECF No. 54-1 at PageID 345.)  While Plaintiff now disputes that she pushed Fischer and claims that she put her arm up in self-defense to create

space between the two due to Fischer's actions, FedEx—relying on facts the company gathered in its investigation—discharged Plaintiff based on its conclusion that she committed workplace violence. *See Upshaw v. Ford Motor Co.*, 576 F.3d 576, 586–87 (6th Cir. 2009) (finding that a later-discovered mistake in the data on which employer relief in taking an employment action does not constitute pretext where the employer honestly believed, based on the facts before it at the time, that the data supported its action). The only question remaining is whether FedEx's conclusion was an honest belief.

Plaintiff argues that the grounds for termination—workplace violence—have no factual basis. (ECF No. 72-4 at PageID 712.) But during the investigation into the confrontation between Plaintiff and Fischer, Plaintiff herself admitted to other people that she pushed Fischer. (ECF Nos. 54-1 at PageID 345; 54-2 at PageID 441–44, 447, 480–82, 517.) And the undisputed facts here make clear that an employee who commits *physical* violence in the workplace— whether a push or other aggressive touch—leads to that employee's termination. (ECF No. 54-1 at PageID 346.) And so the legal question here is not whether Plaintiff *actually* pushed Fischer, but whether she told Scallions she pushed her, giving FedEx grounds for termination based on workplace violence. *See Seeger*, 681 F.3d at 285.

Plaintiff has produced no evidence showing that FedEx's conclusion was wrong, much less that it did not have an honestly held belief that she violated the Acceptable Conduct Policy. So too here, Plaintiff failed to show that FedEx did not make a reasonably informed and considered decision based on a thorough investigation before terminating her employment for violating that policy. *See Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 398 (6th Cir. 2008); *Michael v. Caterpillar Fin. Servs.*, 496 F.3d 584, 598–99 (6th Cir. 2007). As a result, viewing the facts in the light most favorable to Plaintiff's account of the incident, there is no genuine

issue of material fact that Defendant FedEx terminated Plaintiff based on its' honest belief that Plaintiff committed an act of physical violence against Fischer in violation of its Acceptable Conduct Policy.

Besides, Plaintiff has not presented any evidence showing that her violation of the Acceptable Conduct Policy did not motivate the decision to discharge her.  (*See* ECF No. 72.) *See, e.g.*, *Blackshear v. Interstate Brands Corp.*, 495 F. App'x 613, (6th Cir. 2012) (citing *Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 558–59 (6th Cir. 2009) (finding that plaintiff failed to show that employer's reason for termination was insufficient where employer discharged plaintiff because she violated company policy)).

The undisputed evidence here shows that any employee who *physically* touches another in an aggressive or violent manner will be terminated.  (ECF No. 54-1 at PageID 346.)   And Rich Pyszniak, the Human Resources advisor, testified that he had been involved in over one hundred situations in which an employee violated the Acceptable Conduct Policy and, that any violent touching—whether it be a push, tap, or punch—is a terminable offense.  (ECF No. 54-2 at PageID 589–90.)

Taken as a whole, no reasonable jury could find that Plaintiff can prove FedEx's reason for terminating her employment was pretext.  There is not a genuine issue of material fact about whether FedEx's stated reasoning is pretext.  Defendant is therefore entitled to summary judgment on Plaintiff's race discrimination claim.  And so the Court **GRANTS** Defendant's motion for summary judgment on that claim.

## III.   Plaintiff's Hostile Work Environment Claims Against Defendant FedEx

Plaintiff next alleges that she suffered race-based harassment which created a hostile work environment in violation of Title VII.  (ECF No. 10 at PageID 70–71.)  To establish a

prima facie case of a hostile work environment, Plaintiff must establish:  (1) she belonged to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on race or national origin, (4) the harassment was severe or pervasive enough to alter the conditions of employment and create an abusive working environment, and (5) Defendant FedEx knew or should have known about the harassment and failed to act.  *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011).  Defendant FedEx counters that it is entitled to summary judgment on Plaintiff's hostile work environment claim because she cannot meet the second, third, fourth, and fifth elements of the claim.  (ECF No. 54-3 at PageID 598–603.)[3]

The alleged incidents of harassment are:  (1) Fischer was "keeping tabs" on Plaintiff and documenting her comings and goings in the office; (2)  Fischer routinely emailed Scallions complaints about Plaintiff; (3) Fischer disparaged Plaintiff to other coworkers and "verbally harassed" her; and, (4) Fischer constantly cancelled meetings and purportedly refused to train Plaintiff properly.  (ECF No. 10 at PageID 57–58.)  But the fact that Plaintiff alleges she was harassed by Fischer does not prove a prima facie case of a hostile work environment.  Plaintiff must also prove that Fischer's harassment was motivated by race.

To show a race-based hostile work environment under Title VII, a plaintiff has to allege some form of race-based harassment.  *See id.* at 4–5; *see also Farmer v. Cleveland Pub. Power*, 295 F.3d 593, 605 (6th Cir. 2002) ("[A] racial or sexual hostile work environment claim is cognizable only if the purported harassment, viewed in conjunction with all of the circumstances, occurred because of the employee's race or gender.").  Plaintiff may prove that harassment was

---

[3] Plaintiff also tries to argue that Scallions harassed her in response to Defendants' motion for summary judgment.  (ECF No. 72-4.)  But Plaintiff did not claim harassment by Scallions in her Amended Complaint. (*See* ECF No. 10).  And so the Court will not consider these new allegations as rebuttal proof to support her claim of hostile work environment in response to Defendant's motion.

based on race either by (1) direct evidence of the use of race-specific and derogatory terms or (2) comparative evidence about how the alleged harasser treated members of other races in a mixed-race workplace. *See Williams*, 643 F.3d at 511 (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80–81 (1998)). "Harassment is based on race when it would not have occurred but for the plaintiff's race; the harassing conduct need not be overtly racist to qualify." *Id.* (citing *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir. 2007)).

Plaintiff lacks any direct evidence that any of this adverse treatment was based on her race. None of it involved racist language or racially derogatory comments on the part of Fischer. In fact, Plaintiff agrees that she did not see Fischer treat people differently based on race. (ECF Nos. 54-1 at PageID 345; 72-1 at PageID 676–78.) Plaintiff's claim is based on the theory that the facially neutral conduct of Fischer was, in fact, based on her race. Plaintiff must therefore put forth some comparative evidence showing that but for her race, she would not have been harassed. *Clay*, 501 F.3d at 706 (citing *Farmer*, 295 F.3d at 605, *abrogated on other grounds by White v. Columbus Metro. Housing Auth.*, 429 F.3d 232, 240–41 (6th Cir. 2005)).

And Plaintiff's comparative evidence argument is ultimately unpersuasive. She alleges no comparative evidence with which the Court may find race-based motive for the harassment. Plaintiff essentially contends that above incidents with Fischer "point to racial bias" because she was the only black employee on Scallions's team. (ECF No. 72-4 at PageID 696–97.) But in her deposition, Plaintiff testified that she "wasn't sure why [Fischer] was harassing her" (ECF No. 54-2 at PageID 453), and that Fischer was equally negative and critical of white employees as she was of Plaintiff (*id.* at PageID 411–13).[4]

_____

[4] Plaintiff testified "I wouldn't say specifically [that Fischer was biased or prejudiced] just against blacks, but I just didn't feel like she liked pretty much anybody. I mean, because

While Plaintiff has documented instances of tension in the workplace between her and Fischer, that alone is simply insufficient to make out a claim for a Title VII hostile work environment claim.  Plaintiff has not shown that Fischer singled her out as the target of race-based harassment.  Fischer, by Plaintiff's own account, was equally critical of everyone with whom she worked, no matter the race.  *See, e.g.*, *EEOC v. Harbert-Yeargin, Inc.*, 266 F.2d 498, 508 (6th Cir. 2001) (explaining in a sex harassment case that "'Title VII does not cover the 'equal opportunity . . . harasser'" "because such person is not *discriminating* on the basis of sex.'" (internal citation omitted)).  As with sex discrimination, an "equal opportunity harasser" who harasses across all racial divides cannot be said to be discriminating on the basis of race.  In the light most favorable to Plaintiff, the evidence here proves that Fischer was an equal opportunity harasser—critical of everyone in her workgroup—even her superiors.  (ECF No. 54-2 at PageID 413.)

As Defendant rightly argues, Title VII is not "a general civility code for the American workplace. . . .  In other words, the conduct of jerks, bullies, and persecutors is simply not actionable under Title VII unless they are acting because of the victim's [race]."  *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 467 (6th Cir. 2012).  Plaintiff's speculation that she was harassed based on her race alone is not proof that racial animus drove Fischer's actions.  *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) ("[C]onclusory statements are not sufficient to survive any motion for summary judgment.").  And without proof that the alleged harassment was based on her race, Plaintiff's claim for a hostile work environment must fail.  *Williams*, 643 F.3d at 511.

---

everybody came with a negative comment or derogatory remark."  (ECF No. 54-2 at PageID 413.)  And Plaintiff testified that Fischer even talked negatively about Scallions.  (*Id.*)

All in all, a rational trier of fact could not find that Plaintiff has established facts tending to show that she suffered *race-based* harassment at work. The Court therefore finds that Plaintiff has failed to make a prima facie showing of race-based hostile work environment. The Court therefore **GRANTS** Defendant FedEx's Motion for Summary Judgment as to Plaintiff's hostile work environment claim.

## IV.    Plaintiff's Retaliation Claims Against Defendant FedEx

As with claims of race discrimination, to prove unlawful retaliation Plaintiff may present either direct evidence of that retaliation or a prima facie case under the *McDonnell Douglas* framework. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002); *Laderach v. U-Haul of Northwestern Ohio*, 207 F.3d 825, 829 (6th Cir. 2000). Direct evidence is evidence which, if believed, *requires* the conclusion that unlawful retaliation was a motivating factor in the employer's action. *See Laderach*, 207 F.3d at 829. When, as here, the plaintiff tenders no direct evidence—only circumstantial evidence of retaliation—the plaintiff must then establish a prima facie case of unlawful retaliation under *McDonnell Douglas*. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003) (*citing Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001)).

If the plaintiff meets this burden, the burden then shifts to the defendants to "articulate a legitimate, nondiscriminatory reason for the adverse action." *Id.* (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000)). And if the defendant proves a legitimate, nondiscriminatory reason for the action, the burden shifts back to the plaintiff to "demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for discrimination." *Id.* (citing *Manzer v. Diamond Shamrock Chems., Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

Plaintiff alleges two occurrences of retaliation here:  (1) her reassignment to the Tuggle Road warehouse, and (2) her termination.  (*See* ECF No. 10 at PageID 80–81.)

To make a prima facie showing of unlawful retaliation under Title VII, Plaintiff must demonstrate by a preponderance of the evidence that "(1) [s]he engaged in activity that Title VII protects, (2) defendant knew that [s]he engaged in this protected activity; (3) the defendant subsequently took an employment action adverse to the plaintiff; and (4) a causal connection between the protected activity and the adverse employment action exists." *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003) (*citing Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001)).  This "burden of establishing the prima facie case on summary judgment is 'easily met.'" *Herrera v. Churchill McGee, LLC*, 545 F. App'x 499. 501 (6th Cir. 2013) (quoting *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004)).

Defendant FedEx argues that Plaintiff proves none of the elements of a prima facie case of retaliation.  Simply put, Defendant argues that Plaintiff has no proof to establish the first, third, and fourth elements.  (ECF No. 54-3 at PageID 607–10.)

At the outset, Plaintiff must establish that she engaged in a protected activity.  "[T]here are two types of 'protected activity' for purposes of a Title VII retaliation claim:  (1) 'oppos[ing] any practice made an unlawful employment practice' by Title VII, and (2) making a charge, testifying, assisting, or participating in an 'investigation, proceeding, or hearing' under Title VII." *Abbott*, 348 F.3d at 542 (quoting 42 U.S.C. § 2000e-3(a)).  Plaintiff does not contend that Scallions retaliated against her for making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII.  (*See* ECF No. 72-4.)  The only route remaining for Plaintiff to show that she engaged in protected activity is if she opposed any practice made an unlawful employment practice under Title VII.  *Abbott*, 348 F.3d at 542.  But

the Court finds that Plaintiff lacks any evidence that she opposed any unlawful employment practices.

Plaintiff fails to prove that she made a complaint which Scallions should have reasonably understood to be a claim of discrimination or harassment. *Mumm v. Charter Township of Superior*, 727 F. App'x 110, 112 (6th Cir. 2012) (quoting *Braun v. Ultimate Jercharters, LLC*, 828 F.3d 501, 512 (6th Cir. 2016) ("A plaintiff's objection to an employment practice is protected activity if her supervisors "should have reasonably understood that [she] was making a complaint of [race] discrimination.")  Such a complaint has to allege unlawful discrimination and not just general unfairness. *Id.*  "And while a complaint need not be 'lodged with absolute formality, clarity, or precision,' . . . 'a vague charge of discrimination . . . is insufficient to constitute opposition to an unlawful employment practice.'" *Id.* at 112–13 (internal citations omitted).  Plaintiff made no qualifying complaint here.

Plaintiff complained to Scallions that Fischer was "keeping tabs on her" and "always checking where [she] was." (ECF Nos. 54-1 at PageID 341; 72-1 at PageID 659–60.)  Plaintiff reported this behavior to Scallions as harassing.  (ECF Nos. 54-1 at PageID 341; 72-1 at PageID 659–60.)  At the same time, Plaintiff herself told Scallions she was unsure why Fischer was harassing her and "giving [her] a really tough time." (ECF No. 54-1 at PageID 342.)  So Plaintiff never reported to anyone at FedEx that Fischer discriminated against her because of her race.  (ECF Nos. 54-1 at PageID 345; 72-1 at PageID 678.)

Plaintiff alleges her complaints of "harassment and hostile work environment put Scallions on notice that she was opposing unlawful employment practices.  (ECF No. 72-4 at PageID 705.)  But Plaintiff's complaints are nothing more than vague charges of "harassment and hostile work environment" with no allegations of *unlawful* discrimination. *Mumm*, 727 F.

App'x at 112; *see also*, *Fox v. Eagle Distributing Co.*, 510 F.3d 587, 592 (6th Cir. 2007) (finding a complaint too vague where the plaintiff alleged only that management was "out to get him" and unfairly denied him a promotion). The Court is unwilling to hold here that Scallions should have inferred unlawful discrimination based on these general complaints.[5] To do so would turn every workplace conduct report into one covered by Title VII—and that was not the intention of Title VII.[6]

The Court finds that a rational trier of fact could not conclude that Plaintiff engaged in protected activity by opposing an employment practice made unlawful by Title VII. The Court therefore need not analyze the remaining disputes about Plaintiff's retaliation claims. Plaintiff has failed to make a prima facie showing of retaliation. And so the Court **GRANTS** Defendant FedEx's Motion for Summary Judgment as to Plaintiff's retaliation claim.

## CONCLUSION

Although the record is replete with evidence of tension between Plaintiff and Fischer, eventually leading to a physical altercation, Plaintiff has produced no evidence with which a rational trier of fact could conclude that she has carried her burden of proving race

---

[5] From Plaintiff's deposition testimony, Fischer never did or said anything that made Plaintiff believe she was biased or prejudiced against black people. (ECF Nos. 54-1 at PageID 345; 72-1 at PageID 678.) And Plaintiff stated that Fischer was equally negative and critical of white employees as she was of Plaintiff. (ECF No. 54-2 at PageID 411–13.) Plaintiff must establish that she challenged an employment practice she reasonably believed was unlawful to make a Title VII claim. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 580 (6th Cir. 2000). Plaintiff's testimony contradicts her assertions that Fischer harassed her because of her race. And the Court has already held, on her hostile work environment claim, that the undisputed evidence establishes that Fischer was an "equal opportunity harasser" who targeted all of her coworkers— and even her superiors—regardless of their race. *See supra* pp. 18–22.

[6] As the Court has already noted above, Title VII is not "a general civility code for the American workplace. . . . In other words, the conduct of jerks, bullies, and persecutors is simply not actionable under Title VII unless they are acting because of the victim's [being in a protected group]." *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 467 (6th Cir. 2012).

discrimination, hostile work environment, or retaliation in violation of Title VII.  Plaintiff's conjecture and speculation, alone, is not enough to carry her through to trial.  *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) ("[C]onclusory statements are not sufficient to survive any motion for summary judgment.").

For these reasons, the Court **GRANTS** Defendants' motion to dismiss and **DISMISSES WITH PREJUDICE** all of Plaintiff's claims against both Defendant Scallions, in her individual capacity, and against Defendant FedEx.

**SO ORDERED**, this 19th day of May, 2020.

 s/ Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE